## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN TUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 CV 4699 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| MICHAEL SEARS, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

Before the Court is Defendant Michael Sears's ("Defendant") motion to transfer venue to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1406(a) and 1404(a). For the following reasons, the motion is denied.

### I. BACKGROUND

#### A. Facts

Since 2002, Plaintiff John Tung ("Plaintiff") and Defendant have each held a forty-five percent partnership interest in two companies, Capital Area Regional Center Job Fund, LLC ("CARc") and Global Capital Markets Advisors, LLC ("GCMA").[1] A third partner, Michael Kolodner ("Kolodner"), who is not a party to the instant suit, owns the remaining ten percent of both companies. While the official mailing address for GCMA is located in Virginia, the company has not operated out of a physical corporate office in any state since 2009. Rather, each of the three partners work out of their respective home offices: Plaintiff in Illinois, Defendant in Virginia, and Kolodner in New York.

In 2012, Defendant was in China working for GCMA by marketing and seeking investors for a pending development project. While in China, Defendant became aware of an entity, A

---

[1] CARc is a shell entity managed by GCMA.

Chicago Convention Center, LLC ("ACCC"), which was competing with GCMA for business. ACCC was seeking foreign investors for a proposed convention center in Chicago, Illinois. Defendant, Plaintiff, and Kolodner communicated regularly with respect to ACCC's business strategy and its effect on GCMA. Upon learning more information about ACCC's proposed project, the GCMA partners became suspicious and began an investigation into ACCC.

Plaintiff alleges that in November of 2012, he and Defendant agreed to take the information that they had gathered about ACCC's proposed project to the United States Securities and Exchange Commission ("SEC") on behalf of GCMA. Defendant argues that he brought the information to the SEC on his own, and not in coordination with or on behalf of the other partners.

In any event, Plaintiff continued his investigation in Chicago. On November 29, 2012, Defendant emailed Plaintiff in Illinois and asked him to drive by and take pictures of the alleged ACCC development site in Chicago as soon as possible, which Plaintiff did. On November 30, 2012, Defendant sent an email communication to Plaintiff in Illinois, stating that "[t]he SEC is investigating the offering and asked if we knew if 'construction' had begun [on the ACCC project site] as the marketing material has announced." Pl.'s Opp'n to Def.'s Mot. to Transfer Venue Ex. 1A (emphasis added).

The SEC began its investigation into ACCC's offering in early 2013, and eventually filed a complaint against ACCC in the Northern District of Illinois to seize more than $145 million of funds obtained fraudulently from foreign investors. See United States Sec. & Exchange Comm'n v. A Chi. Convention Ctr., LLC, No. 13-CV-982, (N.D. Ill. filed Feb. 6, 2013).

Plaintiff further alleges that in February of 2013, all three partners of GCMA agreed to apply for a whistleblower award from the SEC using GCMA's outside attorney, Ramsey

Whitworth ("Whitworth"). Plaintiff states that the partners agreed to divide the proceeds in accordance with their respective partnership interests. Upon learning that the SEC rules do not allow an entity to file for a whistleblower award, Plaintiff contends that the partners agreed that Defendant would submit the application in his name, but continue to act on behalf of all three partners. According to Defendant, however, he applied for the award on his own without Plaintiff's knowledge.

The partners continued to communicate about the case before the SEC, including sharing communications from Whitworth, the attorney representing Defendant. In September of 2013, Defendant received a $14.7 million dollar whistleblower award from the SEC. Defendant then informed Plaintiff and Kolodner that he did not intend to share the money with them. Thereafter, Plaintiff attempted to get Defendant to honor his alleged agreement to divide the award.[2] As part of the discussions, Plaintiff and Defendant met in person at O'Hare International Airport in the Northern District of Illinois on October 25, 2013 and December 15, 2013.

## B. Procedural History

On June 23, 2014, Plaintiff, a citizen of Illinois, filed this action against Defendant, a citizen of Virginia, in this District based upon diversity jurisdiction. See 28 U.S.C. § 1332(a). Plaintiff alleges Illinois state law claims of breach of fiduciary duty, promissory estoppel, breach of implied contract, and accounting and constructive trust in connection with the division of the $14.7 million whistleblower award that Defendant received from the SEC. Defendant filed a motion to dismiss for lack of venue pursuant to Federal Rule of Civil Procedure 12(b)(3), which the Court denied on July 18, 2014. Defendant now moves to transfer venue to the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1406(a) and 1404(a).

---

[2] Kolodner reached an unknown settlement agreement with Defendant regarding his disputed portion of the funds in November or December of 2013.

## II. DISCUSSION

### A. Standard of Decision

Section 1406 provides that "[t]he district court in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Under § 1404(a), a district court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

### B. Motion to Transfer Under 28 U.S.C. § 1406(a)

Defendant argues that this matter should be transferred to the Eastern District of Virginia because venue is improper in this District under § 1406(a). Plaintiff asserts that venue is proper because he filed in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Specifically, Plaintiff alleges that phone calls and email communications regarding the alleged agreement were sent from Defendant and directed to Plaintiff in the Northern District of Illinois. In addition, once the funds were dispersed to Defendant, Plaintiff met with Defendant in person in the Northern District of Illinois at O'Hare International Airport to discuss the alleged agreement to divide the money. "For venue to be proper under [§ 1391(b)(2)], a majority of the events giving rise to the claim need not occur in the venue, only a substantial part." Interlease Aviation Investors II LLLC v. Vanguard Airlines, Inc., 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003) (internal quotation marks and citation omitted). "The requirements of [§ 1391(b)(2)] may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." Id. (internal

4

quotation marks and citations omitted). Because the agreement at issue was allegedly made through telephone conversations and email communications from Defendant directed to Plaintiff in the Northern District of Illinois, venue is proper here. Thus, Defendant's motion to transfer pursuant to § 1406(a) on the basis of improper venue is denied.

## C. Motion to Transfer Under 28 U.S.C. § 1404(a)

Next, Defendant asks the Court to transfer the case pursuant to § 1404. Transfer under § 1404 is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc., 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986) (citations omitted). "'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 979 (7th Cir. 2010) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

As to the first factor, the Court finds that venue is proper in this District as well as in the Eastern District of Virginia. The agreement, if any, was entered into during email and telephone conversations sent and received in both districts. See 28 U.S.C. § 1391(b)(2).

"With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. Other related factors include the location of material events and the relative ease of access to sources of proof." Research Automation, Inc., 626 F.3d at 978 (citations omitted). The

convenience of the party witnesses is, at best, a neutral factor because one party will have to travel regardless. The only non-party witness identified by the parties is Kolodner, who resides in New York. Because New York is equally accessible to Virginia and Chicago by plane, this too, is a neutral factor. Regarding evidence, Plaintiff alleges that he will seek documents from GCMA, Whitworth, and the SEC offices where Defendant applied for the whistleblower award. According to Plaintiff, those documents are located in New York, Baltimore, Maryland, and Washington, D.C., respectively. Since these documents will have to be copied and sent to either venue, this factor does not weigh in favor of one over the other. See Gueorguiev v. Max Rave, LLC, 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007) (stating that the "location of records has no impact on transfer analysis unless extraordinarily voluminous or otherwise difficult to ship." (citation omitted)). In sum, this factor is neutral for both parties. However, because many of the material events at issue took place within this District, including the underlying fraud case, Plaintiff's choice of forum is entitled to great deference. See In re Nat'l Presto Indus., Inc., 347 F.3d 662, 664 (7th Cir. 2003).

Finally, the Court evaluates the interest of justice, which pertains to the "efficient administration of the court system," and is a distinct and "separate component of a § 1404(a) analysis." Coffey, 796 F.2d at 220-21 (citations omitted). This component "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." Id. at 220 (citations omitted). Courts traditionally consider the following factors: (1) "docket congestion and likely speed to trial in the transferor and potential transferee forums"; (2) "each court's relative familiarity with the relevant law"; (3) "the respective desirability of resolving controversies in each locale"; and (4) "the relationship of each community to the controversy." Research Automation, Inc., 626 F.3d at 978 (citations omitted).

As to the first factor, although there is more docket congestion in the Northern District of Illinois than in the Eastern District of Virginia, the median time of disposition for civil cases in both districts in under seven months. See Federal Court Management Statistics June 2014, United States Courts, available at http://www.uscourts.gov/Statistics/FederalCourtManagement Statistics/district-courts-june-2014.aspx (last visited Dec. 2, 2014). With respect to the familiarity with the relevant law, Plaintiff brings his claims pursuant to Illinois state law, with which this District is more familiar than the Eastern District of Virginia. As to the third factor, both districts have an interest in resolving this controversy where each party resides. Lastly, the community in this District has a greater interest in the controversy because the SEC action and the fraud underlying the whistleblower claim occurred here. In the Eastern District of Virginia, Defendant is the only member of the community who is affected by the controversy. On balance, the Court finds that the interests of justice and judicial economy weigh in favor of keeping this matter in the Northern District of Illinois.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to transfer venue pursuant to §§ 1406(a) and 1404(a) is denied.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: December 3, 2014